IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEPHEN HOOD, et al.,

                Plaintiffs,

v.                                                    CIVIL ACTION NO.   2:22-cv-00265

CHRISTINA FARMER, et al.,

                Defendants.


MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant William E. Belcher's Motion to Dismiss. [ECF No. 13]. Plaintiffs have responded [ECF No. 15], and Mr. Belcher has replied [ECF No. 20]. For the reasons stated herein, Mr. Belcher's Motion is **GRANTED in part** and **DENIED in part**.

## I.    Background

Plaintiffs Mary and Stephen Hood are the biological grandparents and adoptive parents of the minor children J.H. and M.D. [ECF No. 1, ¶ 5]. This action arises out of J.H. and M.D.'s allegedly unlawful removal from Plaintiffs' custody for several months in late 2020 and early 2021.

On April 5, 2018, J.H. was born to Plaintiffs' daughter, Jessica Smith, who has a long history of substance abuse. *Id.* ¶ 13. Since April 2018, J.H. has resided with Plaintiffs, who became her legal guardians in September 2019. *Id.* ¶¶ 14–16; [ECF

No. 1-1]. On August 25, 2020, Ms. Smith gave birth to M.D. Because M.D. was born with controlled substances in his system, Fayette County Child Protective Services ("CPS") was notified of possible abuse and neglect. [ECF No. 1, ¶¶ 17–18; ECF No. 1-2, at 2]. On September 4, 2020, the West Virginia Department of Health and Human Resources ("DHHR") authorized M.D.'s uncle, Dylan Smith, to take M.D. home from the hospital. [ECF No. 1, ¶ 20].

On September 7, 2020, Ms. Hood visited M.D. at Mr. Smith's residence. *Id.* ¶ 21. She noticed M.D. had thrush and took him to a medical clinic. *Id.* ¶¶ 21–22. "[F]or unknown reasons, when Ms. Smith learned that Plaintiff Mary Hood had taken M.D. to the doctor, she called Fayette County CPS." *Id.* ¶ 23. The Complaint alleges that while at the medical clinic, Ms. Hood received a phone call from Defendant Christina Farmer, a case worker with CPS. *Id.* ¶¶ 22, 24. At Ms. Farmer's request, Plaintiffs brought J.H. and M.D. to the Fayette County DHHR Office later that day. Upon arrival, they were met by Ms. Farmer and Defendant Jeanette Frame, another CPS case worker, who informed Plaintiffs they were "taking both kids." *Id.* ¶ 26. Plaintiffs produced a copy of the order appointing them guardians of J.H., but Ms. Frame "refused to read it." *Id.* ¶ 28. Ms. Frame "falsely claimed" that Ms. Hood had an open abuse and neglect case which allowed DHHR to remove the children, and that Mr. Hood's criminal history also authorized removal. *Id.* ¶¶ 32–36. Plaintiffs exited the DHHR office to retrieve the children's car seats and once outside were not permitted

back into the building. *Id.* ¶¶ 38–41. Plaintiffs did not see J.H. or M.D. again for approximately five months. *Id.* ¶ 42.

After J.H. and M.D. were removed from their care, Plaintiffs contacted DHHR on multiple occasions. During a telephone conversation with Regional Director William Belcher, Ms. Hood asked "how DHHR could take J.H. and M.D. away without a court order or any evidence that the children were being abused or neglected by Plaintiffs." *Id.* ¶ 46. Mr. Belcher told Ms. Hood that he "do[es]n't know all the rules and regulations" and that he "stands by his workers" and "supported" the decision to remove the children. *Id.* ¶¶ 45–46.

On September 9, 2020, Ms. Farmer filed a Petition to Institute Child Abuse and Neglect Proceedings (the "Petition") in the Circuit Court of Fayette County, West Virginia. *Id.* ¶ 48; [ECF No. 1-2]. The Petition did not name Plaintiffs as adult respondents, but it stated: "The adult respondent mother alleges this child is in a legal guardianship with the child's maternal grandmother. However, the Department is unable to locate any legal document stating the same." [ECF No. 1-2, at 1 n.1]. Plaintiffs allege that in filing the Petition, Ms. Farmer "made several knowingly false statements to the Court." [ECF No. 1, ¶ 52]. Later that day, the Circuit Court granted the Petition and entered an initial order transferring custody of J.H. and M.D. to DHHR. *Id.* ¶ 55.

On December 13, 2020, a multidisciplinary team ("MDT") met and "discussed that the maternal grandparents may have legal guardianship of [J.H.]." *Id.* ¶ 58

(quoting MDT Report). On January 26, 2021, "the Guardianship Order was finally acknowledged" and Assistant Prosecuting Attorney Burdick, "ostensibly at the direction of DHHR," filed an Amended Petition in the Fayette County Circuit Court. *Id.* ¶¶ 60–61; [ECF No. 1-3]. The Amended Petition named Plaintiffs as adult respondents and recognized their legal guardianship of J.H., but still requested that J.H. and M.D. be removed from Plaintiffs' care and remain in DHHR's custody. [ECF No. 1, ¶¶ 60, 65; ECF No. 1-3]. Additionally, "like the initial Petition, the Amended Petition also made several knowingly false statements to the Court." [ECF No. 16, at 4]. Plaintiffs, by counsel, moved to dismiss the Amended Petition. [ECF No. 1-3, at 2]. Following a motions hearing on February 12, 2021, the Circuit Court entered an order restoring physical custody of J.H. and M.D. to Plaintiffs. *Id.*

On July 3, 2021, Plaintiffs were granted legal guardianship over M.D. [ECF No. 1, ¶ 69]. On February 14, 2022, Plaintiffs legally adopted J.H. and M.D. *Id.* ¶ 70.

On June 23, 2022, Plaintiffs, on behalf of J.H. and M.D., filed their Complaint setting forth thirteen claims, ten of which are asserted against Defendant Belcher: Fourth Amendment violation for unreasonable seizure (Count I), conspiracy to commit Fourth Amendment violation for unreasonable seizure (Count II), Fourteenth Amendment violation of substantive due process (Count III), conspiracy to commit Fourteenth Amendment violation of substantive due process (Count IV), negligence (Count V), gross negligence (Count VI), *prima facie* negligence (Count VII),

intentional infliction of emotional distress (Count VIII), abuse of process (Count IX), and civil conspiracy (Count X).[1]

Mr. Belcher moves to dismiss these claims, arguing "Plaintiffs do not allege that Mr. Belcher took any active role or made any determinations with respect to the removal of the children or the filing of any petition or legal document." [ECF No. 14, at 4]. Therefore, "Plaintiffs fail to state a claim upon which relief can be granted on any claim asserted against Mr. Belcher as an individual." *Id.* at 2. Mr. Belcher further asserts that he is entitled to absolute immunity, qualified immunity, and statutory immunity. *Id.* at 7–10, 13–15, 17, 19–20.

## II.   Legal Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need not include "detailed factual allegations," but it must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To achieve facial

---

[1] Plaintiffs' Complaint contains three additional counts—negligent hiring (Count XI), negligent supervision and training (Count XII), and negligent retention (Count XII—asserted against then-Defendant DHHR. [ECF No. 1]. I previously granted DHHR's Motion to Dismiss, [ECF Nos. 11, 45], leaving Counts I through X pending against the remaining defendants.

plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Bare "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### III.    Discussion

Plaintiffs have asserted a combination of federal constitutional claims and state tort claims against Defendant Belcher. Because the state and federal claims are governed by different immunity laws and theories of liability, I address each set of claims separately, beginning with those arising under federal law.

### A.  Federal Claims Under § 1983

#### i.  Absolute Immunity

Defendant Belcher argues that, to the extent the constitutional claims against him involve court filings in the Circuit Court of Fayette County, he is entitled to absolute immunity for prosecutorial functions. [ECF No. 14, at 7]. Plaintiffs "recognize that Supervisor Belcher may be entitled to prosecutorial immunity . . . for his role in the knowingly false representations made in the Petition," but "the claims asserted against him . . . involve more than just that." [ECF No. 15, at 9].

Absolute immunity exempts government officials from liability for "activities intimately associated with the judicial process." *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 136 (4th Cir. 1989) (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)). In *Vosburg*, the Fourth Circuit held that in filing a removal petition, "social workers

were acting in a prosecutorial, rather than an investigative or 'policing' capacity," and therefore "must be afforded absolute immunity from any liability arising from this conduct." *Id.* at 135. The court "emphasize[d], however, that [its] grant of absolute immunity applies only to those activities of social workers that could be deemed prosecutorial," and does not extend to "their conduct in investigating the possibility that a removal petition should be filed." *Id.* at 138; *see also Booker v. S.C. Dep't of Soc. Servs.*, 583 F. App'x 147, 148 (4th Cir. 2014) (granting absolute immunity from claim that defendant "made intentional misstatements when preparing and presenting a petition" but assessing on the merits whether "taking emergency custody of [minor child]" violated plaintiff's due process rights).

I find that Mr. Belcher is immune from suit for his purported role in the abuse and neglect proceedings in circuit court. But I agree with Plaintiffs that the absolute immunity conferred on Defendant Belcher is not dispositive of the claims asserted against him. In their Complaint, Plaintiffs allege that J.H. and M.D. were unlawfully removed from their custody prior to commencement of any legal proceedings, and that Mr. Belcher approved of that removal and the investigative actions leading up to it. *See* [ECF No. 1, ¶ 45 ("Regional Director Belcher stated that he . . . 'supported' the decision to remove the children.")]. Accordingly, absolute immunity does not provide grounds for dismissing the federal claims against Defendant Belcher.

### ii. Failure to State a Claim

In Counts I through IV, Plaintiffs allege violations of the Fourth and Fourteenth Amendments, including conspiracies to commit the same. Plaintiffs contend that Defendant Belcher "interfered with Plaintiffs' care, custody, and maintenance of J.H. and M.D. when he permitted Defendants Farmer and Frame to unlawfully remove the children from Plaintiffs' custody and then failed to act once he was put on notice of the violation." [ECF No. 15, at 8–9 (internal markings omitted)]. Mr. Belcher argues that his minimal personal involvement in the alleged constitutional violations is insufficient to impose liability. *See* [ECF No. 14, at 6].

Under § 1983, a supervising official's liability "is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)). The United States Court of Appeals for the Fourth Circuit has "set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's

8

inaction and the particular constitutional injury suffered by the plaintiff." *Id.* at 799 (internal markings omitted).

Establishing a "pervasive and unreasonable risk," as required under the first element, "requires evidence that the conduct is widespread, or at least has been used on several different occasions." *Id.* (citing *Slakan*, 737 F.2d at 373–74). Moreover, "[d]eliberate indifference is a very high standard." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The Fourth Circuit has explained:

> Ordinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Slakan*, 737 F.2d at 373 (internal citation omitted).

In this case, Defendant Belcher was not present at the time of the removal. Therefore, he had no participation in physically carrying out any of the acts which took place. Further, any direction the other defendants took from Mr. Belcher, or any subsequent approval of their actions, would have been isolated to this single incident, which is insufficient to satisfy the heavy burden of proof to attach supervisory liability. *Cf. Leonard v. Starkey*, No. 1:14-cv-42, 2017 WL 354851, at *8 (N.D. W. Va.

Jan. 24, 2017) (rejecting claim against DHHR supervisor based on isolated incident of allegedly unlawful removal by CPS workers).

Alternatively, Plaintiffs assert a theory of "bystander liability" arising from Mr. Belcher's failure to act when he had notice and opportunity to correct the alleged constitutional violations committed by his fellow government officials. Bystander liability is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). Accordingly, "cases applying bystander liability show that the theory applies only to law enforcement officers." *Murphy v. Fields*, No. 3:17-2914, 2018 WL 144971, at *2 (citing *Randall*, 302 F.3d at 203). Although a few courts outside the Fourth Circuit have not limited bystander liability to law enforcement officials, no court has extended bystander liability to child protective services. *See id.* (citing *Davis v. Rennie*, 264 F.3d 86, 98 (1st Cir. 2001) (imposing bystander liability on nurse in a mental health facility); and then citing *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) (same)) (declining to extend bystander liability to school personnel who are present for the arrest of a student). I therefore find that Plaintiffs cannot succeed on their claims against Defendant Belcher under a theory of bystander liability.

Because Plaintiffs have failed to plead facts capable of establishing Mr. Belcher's liability as a direct participant in the alleged constitutional violations,

Defendant's Motion is **GRANTED** as to Counts I and III. In Counts II and IV, however, Plaintiffs seek to impute liability indirectly by asserting claims of conspiracy to commit the alleged constitutional violations.

"To establish a civil conspiracy under § 1983, [Plaintiffs] must present evidence that [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiffs]' deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' factual allegations must reasonably lead to the inference that the defendants "shared the same conspiratorial objective," meaning that they "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

Plaintiffs allege that Defendants conspired toward the unlawful objective of wrongfully removing J.H. and M.D. from Plaintiffs' custody and care. They allege that Mr. Belcher furthered that conspiratorial objective by supporting the removal decision, choosing not to take corrective action, and dismissing Ms. Hood's inquiry. As a result of Mr. Belcher's actions, the children's unconstitutional removal continued. Taking these allegations as true, I find that Plaintiffs state a claim against Defendant Belcher for conspiracy under § 1983.

In his Motion to Dismiss, Mr. Belcher emphasizes the lack of allegations of any interactions between himself and any other defendant, beyond conclusory assertions

11

that Defendants "'acted jointly and in concert' to deprive Plaintiffs, J.H., and M.D. of their Fourth and Fourteenth Amendment rights." [ECF No. 15, at 17 (quoting ECF No. 1, ¶¶ 101, 124)]. Certainly, "mere allegations of conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient." *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1007 (4th Cir. 1987) (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985)). But courts recognize that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)). Accordingly, while interactions between defendants may well be probative of a conspiracy, the inquiry's proper focus is whether the facts evince a shared conspiratorial objective. *Compare Gass v. Matthews*, No. 18-2360, 2018 WL 6249710, at *4 (E.D. Pa. Nov. 29, 2018) ("An 'after-the-fact' conspiracy to cover up the use of force and prevent access to the courts can be shown through 'material omissions in contemporaneous . . . reports' and 'conflicting accounts' of the events in question." (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 296–97 (3d Cir. 2018))), *with Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416 (4th Cir. 2020) (finding defendants' interactions did "not plausibly suggest that they shared a common plan or conspiratorial objective" because meetings "were consistent with . . . normal interaction"). Here, Mr. Belcher is alleged to have directly referenced the purportedly unlawful removal while taking actions to continue that removal. These allegations are sufficiently indicative of a shared conspiratorial

12

objective to sustain a claim for conspiracy. *Cf. Hafner*, 983 F.2d at 578 ("Acquiescence can amount to a conspiracy agreement when, as here, one police officer watches an open breach of the law and does nothing to seek its prevention.").

### iii. Qualified Immunity

Even if Plaintiffs have stated a plausible claim for relief in Counts II and IV, Defendant contends that he is entitled to the protection of qualified immunity. "Individual liability for actions in the performance of official duties arises only when an officer knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights" of the individuals affected "or if he took the action with the malicious intention to cause deprivation of constitutional rights or injury." *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982).

Here, the removal, as alleged, deprived J.H. of her clearly established Fourth and Fourteenth Amendment rights by severing custody from her legal guardians without a court order or any basis to suspect abuse by Plaintiffs. *See Gedrich v. Fairfax Cnty. Dep't of Fam. Servs.*, 282 F. Supp. 2d 439, 464 (E.D. Va. 2003) ("[I]t is clear that plaintiffs' right to be free from parental contact restrictions imposed without court order, probable cause, or exigent circumstances was clearly established at the time of the violation. If plaintiffs' allegations are true, then [Defendant] did not simply make a bad guess in a gray area, but instead transgressed a bright constitutional line." (citing *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d

13

387, 391 (4th Cir. 1990))). With respect to M.D., who was not yet under Plaintiffs' legal guardianship at the time of removal, Defendant is at least entitled to qualified immunity, because there was probable cause to suspect neglect by M.D.'s biological mother. *See Weller*, 901 F.2d at 391 (holding that removing child in emergency action "based upon some evidence of abuse" does not "shock the conscience").

Once the factual record develops, Mr. Belcher may be fully entitled to qualified immunity at the summary judgment stage. Moreover, the conspiracy claim must be dismissed if no constitutional violation is ultimately found to have been committed by Defendants Farmer and Frame. But at this juncture, I find that Plaintiffs, on behalf of J.H., state a viable claim of conspiracy to violate clearly established law. Accordingly, Defendant's Motion is **DENIED** as to the claims brought on behalf of J.H. in Counts II and IV. The Motion is **GRANTED** to the extent the claims are brought on behalf of M.D.

### B. State Law Tort Claims

#### i. Immunity

With respect to the state law claims (Counts V through X), Mr. Belcher asserts statutory and qualified immunity defenses.[2]

Under West Virginia Code § 49-2-802(h),

---

[2] Additionally, West Virginia law, like federal law, provides absolute immunity from civil liability for prosecutorial functions. *Jarvis v. W. Va. State Police*, 711 S.E.2d 542, 548 n.5 (W. Va. 2010) (citing *Mooney v. Frazier*, 693 S.E.2d 333, 345 n.12 (W. Va. 2010)). Unlike its federal counterpart, however, the state immunity doctrine has never been extended to child protective services workers acting in a prosecutorial capacity. But I need not determine whether such extension is proper because, as the ensuing analysis will show, all surviving claims against Mr. Belcher involve conduct better characterized as investigative, rather than prosecutorial, in nature.

> [n]o child protective services caseworker may be held
> personally liable for any professional decision or action
> taken pursuant to that decision in the performance of his
> or her official duties. . . . However, nothing in this
> subsection protects any child protective services worker
> from any liability . . . for any loss caused by gross
> negligence, willful and wanton misconduct, or intentional
> misconduct.

Section 49-2-810 of the Code further provides:

> Any person, official, or institution participating in good
> faith in any act permitted or required by this article is
> immune from any civil or criminal liability that otherwise
> might result by reason of those actions, including
> individuals . . . who . . . provide information or assistance .
> . . in connection with a report, investigation or legal
> intervention pursuant to a good faith report of child abuse
> or neglect.

W. Va. Code § 49-2-810. Plaintiffs do not dispute that statutory immunity protects

Mr. Belcher from claims of mere negligence, but they maintain that his conduct rises

to the level of "grossly negligent, willful, and wanton misconduct."[3] [ECF No. 15, at

13].

   Similarly, Plaintiffs appear to agree that qualified immunity shields

Defendant Belcher from liability for simple negligence. *See id.* at 13–14; *cf.* Syl. pt. 6,

*W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756 (W. Va. 2014) ("If

a public officer is either authorized or required, in the exercise of his judgment and

discretion, to make a decision and to perform acts in the making of that decision, and

the decision and acts are within the scope of his duty, authority, and jurisdiction, he

---

[3] Plaintiffs do not specifically address Defendant's immunity pursuant to § 49-2-810, but presumably
they believe that Mr. Belcher acted in bad faith.

is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby." (quoting Syl. pt. 4, *Clark v. Dunn*, 465 S.E.2d 374 (W. Va. 1995))). Plaintiffs emphasize, however, that "there is no qualified immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive." [ECF No. 15, at 13 (quoting Syl. pt. 8, *Parkulo v. W. Va. Bd. of Prob. & Parole*, 483 S.E.2d 507, 510 (W. Va. 1996)) (internal markings omitted)]. Moreover, qualified immunity is available only to officials whose "conduct did not violate clearly established laws of which a reasonable official would have known." *Parkulo*, 483 S.E.2d at 520 (quoting Syl. pt. 1, *State v. Chase Sec., Inc.*, 424 S.E.2d 591 (W. Va. 1992)). And as previously discussed, it is clearly established that a child may be removed from their legal guardians only if pursuant to a court order, supported by probable cause, or justified by exigent circumstances. *Gedrich*, 282 F. Supp. 2d at 463 (citing *Weller*, 901 F.2d at 391); *see also Weigle v. Pifer*, 139 F. Supp. 3d 760, 775 (S.D. W. Va. 2015) ("West Virginia's approach to matters concerning immunity historically has followed federal law." (quoting *City of Saint Albans v. Botkins*, 719 S.E.2d 863, 868 (W. Va. 2011)) (internal markings omitted)).

With these frameworks in mind, I proceed to analyze whether Plaintiffs state claims against Defendant Belcher that fall outside the scope of these immunities.

16

### ii.  Failure to State a Claim

#### 1.  Negligence (Counts V, VI, and VII)

Plaintiffs' Complaint contains three counts based in negligence: negligence (Count V), gross negligence (Count VI), and *prima facie* negligence (Count VII). To make out a claim based in negligence, Plaintiffs must demonstrate, by a preponderance of the evidence, that (1) Defendant owed them a duty; (2) Defendant breached that duty by an act or omission; and (3) the breach of the duty proximately caused the injuries that they suffered. *See Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016).

Under the doctrine of *prima facie* negligence, a rebuttable presumption of negligence arises on a showing that a relevant statute was violated. *Flanagan v. Mott*, 114 S.E.2d 331, 335 (W. Va. 1960). By definition, the doctrine operates by presuming the statutory violation indicates a breach in a duty of care. Gross negligence, in contrast to ordinary negligence, requires a greater showing of wrongdoing than merely a breach of duty. *Courtland Co., Inc. v. Union Carbide Corp.*, No. 2:19-cv-00894, 2020 WL 5047131, at *15 (S.D. W. Va. Aug. 26, 2020) ("Gross negligence involves a breach in a duty of care *with aggravating circumstances*." (emphasis added) (internal markings omitted) (quoting *State v. Richeson*, 370 S.E.2d 728, 730 (W. Va. 1988))). Therefore, although statutory violations can provide important evidence of misconduct, no *prima facie* presumption arises under the more demanding standard of gross negligence. *See id.* at *14–16 (finding allegations

17

created *prima facie* presumption of negligence but requiring "an additional showing" to sustain claim for gross negligence). Because Defendant Belcher is statutorily immune from liability for ordinary negligence, Plaintiffs cannot rely on the doctrine of *prima facie* negligence. Similarly, Plaintiffs cannot maintain a separate cause of action for ordinary negligence. Accordingly, Defendant's Motion is **GRANTED** as to Counts IV and V. I proceed to analyze Plaintiffs' negligence-based arguments under a single claim for gross negligence (Count VI).

This court recently explained gross negligence as follows:

> Gross negligence is the same as ordinary negligence, except in degree. Gross negligence involves a breach in a duty of care with "aggravating circumstances indicating rashness or a conscious indifference to the probable dangerous consequences." Gross negligence is synonymous with "reckless conduct" and "reckless disregard for the safety of others."

*Courtland*, 2020 WL 5047131, at *15 (internal citations omitted) (citing *Richeson*, 370 S.E.2d at 730; and then citing *Peak v. Ratliff*, 408 S.E.2d 300, 304 (W. Va. 1991)).

Defendant argues that "all allegations that characterize Mr. Belcher's actions as willful, wanton, malicious, reckless, or similar characterizations" are "threadbare recitals without supporting factual content." [ECF No. 14, at 13]. Plaintiffs assert that Mr. Belcher permitted the continued seizure of J.H. and M.D. and thereby "displayed a conscious indifference to the probable dangerous consequences of [his] actions." [ECF No. 1, ¶ 139].

Although Plaintiffs' allegations are indeed sparse, I find they have adequately pled a claim of gross negligence under West Virginia law. They allege Defendant

18

Belcher had notice that J.H. was taken away "without a court order or any evidence that the children were being abused or neglected by plaintiffs," and chose to ignore Plaintiffs' inquiries, despite the foreseeable harms flowing from his actions. *Id.* ¶ 46. Taking those allegations as true, Plaintiffs state a plausible claim that Mr. Belcher was consciously indifferent to the probable consequence of his bad-faith conduct—i.e., that J.H.'s unlawful removal would continue. *Cf. Scholl v. Ethicon, Inc.*, No. 2:12-cv-00738, 2016 WL 7242552, at *6 (S.D. W. Va. Dec. 14, 2016) ("Generally, gross negligence is an issue for a jury to resolve; it only becomes a question of law when 'reasonable minds could not differ.'" (quoting *Griffin v. Shively*, 315 S.E.2d 210, 212 (Va. 1984))).

As discussed above, Defendant Belcher is entitled to qualified immunity for any constitutional violations asserted on behalf of M.D. Mr. Belcher is similarly entitled to qualified immunity to extent the claim for gross negligence is based on M.D.'s initial removal. Plaintiffs also invoke West Virginia Code § 49-4-601a, which requires that "[w]hen a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child." Additionally, "[t]he department *must* diligently search for relatives of the child and fictive kin within the first days of a child's removal." W. Va. Code § 49-4-601a (emphasis added). A clearly established violation of this statute could rise to the level of gross negligence if committed with conscious disregard for the risk of injury to others. With respect to Mr. Belcher, however, Plaintiffs have not set forth factual allegations from which his involvement

19

in the children's foster care placements could be inferred. During their phone call, Ms. Hood and Mr. Belcher discussed only the children's initial removal. Nothing in the Complaint suggests Mr. Belcher's participation in subsequent decisions. Similarly, Mr. Belcher was not involved in any fraud or other gross misconduct alleged to have impacted M.D. through the abuse and neglect proceedings in circuit court. Accordingly, any claim for gross negligence brought on behalf of M.D. must be dismissed.

Defendant's Motion is **DENIED** as to Plaintiffs' claim for gross negligence set forth in Count VI, except to the extent the claim is brought on behalf of M.D.

### 2.  Intentional Infliction of Emotional Distress (Count VIII)

In Count VIII of their Complaint, Plaintiffs allege that Defendants' "heinous actions caused Plaintiffs, J.H., and M.D. to suffer severe emotional distress." [ECF No. 1, ¶ 153]. To succeed on their claim for intentional infliction of emotional distress ("IIED"), Plaintiffs must show: "(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." *Williamson v. Harden*, 585 S.E.2d 369, 373 (W. Va. 2003) (citing Syl. pt. 3, *Travis v. Alcon Lab'ys,*

*Inc.*, 504 S.E.2d 419 (W. Va. 1998)). "The defendant's conduct 'must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct.'" *Travis*, 504 S.E.2d at 426 (quoting *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 383 (10th Cir. 1988)). The existence of a "special relationship" in which the defendant has "power to affect the plaintiff's interests . . . may produce a character of outrageousness that otherwise might not exist." *Id.* (citing Restatement (Second) of Torts § 46, cmt. e (Am. L. Inst. 1965); and then citing *Bridges v. Winn-Dixie Atlanta, Inc.*, 335 S.E.2d 445, 448 (Ga. 1985)).

I find that Plaintiffs state a plausible claim for IIED. There can be no doubt that Plaintiffs suffered severe emotional distress during their children's five month absence, *see, e.g.*, [ECF No. 1, ¶ 71 ("Plaintiffs . . . were left in a constant state of worry, panic, fear, confusion, depression, anxiety, and distress not knowing how the children were doing, if they were being properly cared for, or if Plaintiffs would ever get custody of them back.")], and they further allege that J.H. and M.D. "exhibited signs of abuse and/or neglect" when returned to Plaintiff's custody, *id.* ¶ 72. Because Plaintiffs allege that Defendant Belcher had notice of the children's improper removal, he therefore, by failing to intervene, could be found to have acted recklessly toward the substantial certainty that Plaintiffs would suffer emotional distress. And Plaintiffs have adequately alleged conduct that could be deemed extreme and outrageous: knowingly permitting the unfounded and indefinite removal of young children from the care and custody of their family and legal guardians.

Additionally, IIED involves intentional or reckless, bad-faith conduct which falls outside the scope of statutory and qualified immunities. With respect to M.D., however, Defendant's conduct was not extreme or outrageous, because a reasonable official could believe that M.D.'s removal was lawful.

Mr. Belcher's Motion is **DENIED** with respect to the IIED claim set forth in Count VIII, except to the extent the claim is brought on behalf of M.D.

### 3. Abuse of Process (Count IX)

"Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985). The essential elements of a claim for abuse of process are "first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Id.* at 28 n.8 (quoting W. Prosser, *Handbook of the Law of Torts* § 121 (1971)).

Plaintiffs allege that Defendants "willfully and maliciously misused and misapplied lawfully issued legal processes against Plaintiffs, J.H., and M.D. for purposes not intended or warranted by said processes." [ECF No. 1, ¶¶ 159–60]. Specifically, Plaintiffs allege that the Petition "not only contained knowingly false statements (presumably designed to ensure that J.H. and M.D. were removed from Plaintiffs' custody), but also intentionally failed to name Plaintiffs as adult

22

respondents, which ensured they were not parties to the Petition and not afforded legal counsel." [ECF No. 15, at 16].

Mr. Belcher argues "[t]here are no allegations in the Complaint to support a reasonable inference that Mr. Belcher played any active role in any legal process involving Plaintiffs, much less that he willfully and maliciously misused and misapplied any legal processes against the Plaintiffs." [ECF No. 14, at 18]. I agree. According to the Complaint, Ms. Hood's conversation with Mr. Belcher took place prior to commencement of any legal proceedings. *See* [ECF No. 1, ¶¶ 43–46]. During that call, Ms. Hood specifically inquired into the children's removal in the absence of a court order, *id.* ¶ 46, and there are no allegations that Ms. Hood and Mr. Belcher discussed any possible abuse and neglect proceedings. In their response brief, Plaintiffs posit that "[s]ince Supervisor Belcher was ostensibly responsible for managing the work of his subordinates (Defendants Farmer and Frame), a reasonable inference can be drawn from these allegations that Supervisor Belcher was aware of the contents of the fraudulent Petition, and perhaps took part in drafting or editing the document." [ECF No. 15, at 16]. But contrary to Plaintiffs' assertion, the facts alleged are insufficient to render such an inference reasonable. The Complaint is simply devoid of factual allegations suggesting that Mr. Belcher committed any acts in the use of process. At most, Mr. Belcher played a role in perpetuating the allegedly wrongful removal that occurred prior to initiation of any

legal process. Accordingly, Defendant's Motion is **GRANTED** as it pertains to Count IX.

### 4. Civil Conspiracy (Count X)

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, *Dunn v. Rockwell*, 689 S.E.2d 255, 259 (W. Va. 2009). "At its most fundamental level, a 'civil conspiracy' is 'a combination to commit a tort.'" *Id.* at 268 (quoting *State ex rel. Myers v. Wood*, 175 S.E.2d 637, 645 (W. Va. 1970)). A civil conspiracy is not a standalone cause of action; "it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." *Id.* at 269 (citing *Kessel v. Leavitt*, 511 S.E.2d 720, 754 (W. Va. 1998)). In addition to properly pleading an underlying tort, a plaintiff proceeding on a civil conspiracy claim must plead sufficient factual support for the existence of a shared conspiratorial objective and mutual agreement. *Jane Doe-1 v. Corp. of Pres. of The Church of Jesus Christ of Latter-day Saints*, 801 S.E.2d 443, 476 (W. Va. 2017) (quoting *Ash v. Allstate Ins. Co.*, No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013)). The "agreement need not be express but may be based upon evidence of a course of conduct from which the agreement to act in concert may be implied." *Jane Doe-1*, 801 S.E.2d at 477 (quoting *Conspiracy*, 16 Am. Jur. 2d § 51

(2017)). Additionally, "not every member of a conspiracy must be aware of every action taken in furtherance of it." *Id.* at 473.

Plaintiffs allege "that Supervisor Belcher, Defendant Farmer, and Defendant Frame 'acted jointly and in concert' to negligently injure Plaintiffs, J.H., and M.D., to inflict emotional distress on them, and to abuse process to their detriment." [ECF No. 15, at 18]. Although "persons cannot conspire to be negligent," *Jane Doe-1*, 801 S.E.2d at 473, Plaintiffs have properly alleged a conspiratorial objective to commit intentional torts. Plaintiffs also properly allege that Mr. Belcher furthered the conspiratorial objective by jointly committing the tort of IIED and by sanctioning his alleged co-conspirators' wrongdoing. Accordingly, I find that Plaintiffs state a plausible claim of civil conspiracy.

With respect to M.D., however, Defendant is again entitled to dismissal. For the reasons discussed throughout this opinion, the allegations against Mr. Belcher are limited to the children's initial removal. And M.D.'s initial removal was at least arguably lawful, giving rise to qualified immunity. Although the allegations against Defendants Farmer and Frame encompass additional misconduct involving M.D., that conduct falls outside the scope of any shared conspiratorial objective that may be imputed to Defendant Belcher.

Defendant Belcher's Motion is **DENIED** as to Count X, except to the extent the claim is brought on behalf of M.D.

## IV.    Conclusion

Based on the foregoing discussion, Defendant Belcher's Motion to Dismiss [ECF No. 13] is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to Counts I (Fourth Amendment violation), III (Fourteenth Amendment violation), V (simple negligence), VII (*prima facie* negligence), and IX (abuse of process),[4] and **DENIED** as to Counts II (conspiracy to violate Fourth Amendment), IV (conspiracy to violate Fourteenth Amendment), VI (gross negligence), VIII (IIED), and X (civil conspiracy). The Motion is further **GRANTED** as to all Counts to the extent they involve claims brought against Mr. Belcher on behalf of M.D.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 13, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[4] Although dismissed as to Defendant Belcher, these claims remain pending against Defendants Farmer and Frame.

26