IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEPHEN HOOD, et al.,

                    Plaintiffs,

v.                                    CIVIL ACTION NO.   2:22-cv-00265

CHRISTINA FARMER, et al.,

                    Defendants.


## MEMORANDUM OPINION AND ORDER

Pending before the court are two motions for summary judgment—one filed by each remaining defendant in this case. [ECF No. 68 (Defendant Jeanette Frame); ECF No. 70 (Defendant Christina Farmer)]. Because the motions raise substantially similar arguments in favor of summary judgment, I will dispose of them together. For reasons stated herein, the motions are **GRANTED in part**.

I.      **Background**

        A. **Relevant Facts**

Plaintiffs Mary and Stephen Hood are the biological grandparents, and now adoptive parents, of the minor children J.H. and M.D. [ECF No. 1, ¶ 5]. This action arises out of the allegedly unlawful removal of the minors from Plaintiffs' custody for several months in late 2020 and early 2021, following the birth of M.D.

Two years prior, on April 5, 2018, J.H. was born to Ms. Hood's daughter, Jessica Smith, who has a history of substance abuse. [ECF No. 70-1, at 12–18].[1] When Ms. Smith was four months pregnant with J.H., she moved in with the Hoods, who began taking her three times per week to receive treatment for her substance use. [ECF No. 72-1, at 64:2–65:17]. When J.H. was born with controlled substances in her system, Child Protective Services ("CPS") was notified and investigated the possible abuse and neglect of J.H. [ECF No. 70-1, at 14]. CPS made a substantiated finding of maltreatment against Ms. Smith but ultimately concluded that J.H. could safely remain in the home with her mother and grandparents. *See id.* at 12–18.

Shortly after J.H. was born with controlled substances in her system, Ms. Smith was kicked out of her treatment program. [ECF No. 72-1, at 69:12–17]. In May 2019, Ms. Smith was arrested for hitting Ms. Hood, who subsequently took out a domestic violence petition against Ms. Smith. *Id.* at 21:6–22:18. After her arrest, Ms. Smith never returned to living with the Hoods, who became J.H.'s legal guardians in September 2019. *Id.* at 71:4–6, 73:11–75:21. At the time, CPS was not notified of the domestic violence petition, the guardianship, or Ms. Smith's resumed drug use. *Id.* at 74:8–21.

---

[1] The exhibits included with Defendant Farmer's Motion for Summary Judgment were filed as a single attachment and thus are not separately paginated. *See* [ECF No. 70-1]. When citing to depositions, the court uses the page numbers shown on the top-right corner of the reporter's transcript. For all other citations to the record, the court uses the page numbers assigned by the federal judiciary's Case Management/Electronic Case File system.

M.D. was born on August 25, 2020. Upon admission for delivery, Ms. Smith tested positive for controlled substances, and Fayette County CPS was notified of possible abuse and neglect. [ECF No. 70-1, at 3–4]. The next day, Defendant Farmer, a CPS worker, met with Ms. Smith at the hospital to conduct an interview. *Id.* at 4. During that interview, Ms. Smith admitted to continued substance abuse, including in the Hoods' home. *Id.* at 21–22. Following the interview, CPS implemented a temporary protection plan pursuant to which M.D. was placed with Ms. Smith's brother, Dylan Smith. *Id.* at 4; [ECF No. 72-1, at 77:9–79:12]. While Ms. Smith noted that J.H. was under guardianship with her mother, Ms. Hood, she "was unable to identify whether or not this guardianship had taken place before a family court judge." *Id.* at 22. Defendant Farmer conducted a search via FACTS—a computer system used at the time by the West Virginia Department of Health and Human Resources ("DHHR") to document abuse and neglect findings—but did not locate any custody or guardianship orders regarding J.H. [ECF No. 72-5, at 15:12–19]. On August 31, 2020, Defendant Farmer reported her findings to Assistant Prosecuting Attorney William Burdick. [ECF No. 70-1, at 20–23].

On September 9, 2020, Prosecutor Burdick filed a Petition to Institute Child Abuse and Neglect Proceedings (the "Petition") in the Circuit Court of Fayette County, West Virginia. *Id.* at 25–30. The Petition included both J.H. and M.D. but did not name Plaintiffs as adult respondents. It did state: "The adult respondent mother alleges [J.H.] is in a legal guardianship with the child's maternal

3

grandmother. However, the Department is unable to locate any legal document stating the same." *Id.* at 15 n.1. Later that day, the Circuit Court granted the Petition and entered an initial order transferring custody of both J.H. and M.D. to DHHR. *Id.* at 32–33.

That evening, Defendant Farmer and her supervisor, Defendant Frame, effectuated the removal of J.H. and M.D. Earlier that day, Ms. Hood had visited M.D. at Mr. Smith's residence and took him to a medical clinic after noticing he was suffering from thrush. [ECF No. 72-1, at 80:1–81:11]. While at the appointment, Ms. Hood received a telephone call from Defendant Farmer, who asked her to bring the children to the DHHR office because "she needed to physically look at them." *Id.* at 47:11–18. When the Hoods arrived, Defendants informed them that DHHR was taking both children. *Id.* at 49:12. The parties offer varying accounts of their interactions at the DHHR office, but it is undisputed that the Hoods attempted to prove their guardianship over J.H., and that Defendants tried to explain that the guardianship could not prevent the removal. *See id.* at 49:13–50:24; [ECF No. 73-2, at 35:5–20]. Specifically, Defendants explained that they "didn't have the power to leave these children with [the Hoods]" because "the decision was already made by a circuit judge." [ECF No. 72-2, at 54:16–55:3]. Defendants also informed the Hoods that their prior history—a CPS substantiation against Ms. Hood and Mr. Hood's arrest, both in the late 1990s—precluded them from keeping the children at that time. *Id.* at 54:5–55:11; [ECF No. 72-1, at 96:20–97:6].

4

Ms. Hood, who had previously been unaware of her own CPS history, promptly petitioned the DHHR Board of Review to reverse her prior substantiation. [ECF No. 70-1, at 106–11; ECF No. 72-1, at 140:23]. The Board agreed with Ms. Hood that the substantiation had been made in error. [ECF No. 70-1, at 107–110]. Once the substantiation was reversed, Prosecutor Burdick filed an Amended Petition in the Fayette County Circuit Court. [ECF No. 1-3]. The Amended Petition named Plaintiffs as adult respondents and recognized their legal guardianship of J.H., but still requested that J.H. and M.D. be removed from Plaintiffs' care and remain in DHHR's custody. *Id.* Plaintiffs, by counsel, moved to dismiss the Amended Petition. [ECF No. 1-4]. Following a motions hearing on February 12, 2021, the Circuit Court entered an order restoring legal and physical custody of J.H. to Plaintiffs and granting them physical custody of M.D. *Id.*

On July 3, 2021, Plaintiffs were granted legal guardianship over M.D. [ECF No. 1, ¶ 69]. They legally adopted both J.H. and M.D. in February 2022. [ECF No. 72-1, at 182:5–10].

### B.  Procedural History

In their Complaint, filed June 23, 2022, the Hoods initially brought thirteen claims on behalf of J.H. and M.D. against five defendants. [ECF No. 1]. Defendant Necco, LLC, was voluntarily dismissed from this action on August 5, 2022. [ECF No. 18]. Defendants DHHR and William Belcher each filed a motion to dismiss the claims against them. [ECF Nos. 11, 13]. I granted DHHR's motion in full, terminating the

5

Department as a defendant. [ECF No. 45]. I granted Mr. Belcher's motion in part, [ECF No. 53], and Plaintiffs subsequently agreed to dismiss the remaining claims against him, [ECF No. 63]. Defendants Farmer and Frame now move for summary judgment on the ten claims still pending in this case: unreasonable seizure in violation of the Fourth Amendment under § 1983 (Count I); conspiracy to commit unreasonable seizure in violation of the Fourth Amendment under § 1983 (Count II); deprivation of substantive due process in violation of the Fourteenth Amendment under § 1983 (Count III); conspiracy to deprive of substantive due process in violation of the Fourteenth Amendment under § 1983 (Count IV); negligence (Count V); gross negligence (Count VI); *prima facie* negligence (Count VII); intentional infliction of emotional distress (Count VIII); abuse of process (Count IX); and civil conspiracy (Count X).

Before beginning the summary judgment analysis, I find it prudent to identify the relevant facts and describe their evolution over the course of this litigation. In the court's Memorandum Opinion and Order ruling on Mr. Belcher's motion to dismiss, I reviewed the applicable immunity doctrines and explained the heavy burden they create for plaintiffs seeking to impose liability on certain government actors. [ECF No. 53]. Given that heavy burden, I found that Plaintiffs failed to state any viable claim against Mr. Belcher on behalf of M.D., because the Hoods were not yet his legal guardians and there was probable cause to suspect neglect by his biological mother, Ms. Smith. With respect to J.H., however, I found it plausible that Plaintiffs could

meet their burden as to some claims. In reaching that determination, I emphasized two critical allegations, which I was required to accept as true: first, that J.H. and M.D. were taken from the Hoods on September 7th, prior to entry of the September 9th Circuit Court order transferring custody to DHHR; and second, that Defendants had no reason to suspect the plaintiffs of abuse or neglect. *See, e.g.*, *id.* at 13 ("Here, the removal, *as alleged*, deprived J.H. of her clearly established Fourth and Fourteenth Amendment rights by severing custody from her legal guardians without a court order or any basis to suspect abuse by Plaintiffs." (emphasis added) (citing *Gedrich v. Fairfax Cnty. Dep't of Fam. Servs.*, 282 F. Supp. 2d 439, 464 (E.D. Va. 2003))).

The summary judgment record supports neither allegation. As Plaintiffs now acknowledge, J.H. and M.D. were removed from the Hoods' care on September 9, 2020. *See* [ECF No. 75-1, at 43:1–4, 46:13–21]. The removal occurred in the evening, *after* the Circuit Court entered an initial removal order that afternoon. *Id.* at 43:3–4. Thus, a valid court order was in place at the time of the minors' removal.

It is similarly undisputed that Ms. Smith accused Ms. Hood of drug use and violence, and that Ms. Hood's CPS history included a substantiation at the time. [ECF No. 72-1, at 36:6–45:5]. Although that substantiation has since been reversed, and Ms. Smith's allegations may lack evidentiary support, there is no dispute that Defendants had reason—however unfounded in hindsight—to suspect that J.H. and M.D. could not safely be cared for by the Hoods.

As these truths have come to light, Plaintiffs now refocus their arguments on Defendants' lack of diligence in verifying the existence of their guardianship over J.H., and in securing kinship placements for J.H. and M.D. during their temporary removal. But these alleged failures are similarly unsupported by the evidence and, in any event, do not rise to the level of gross misconduct necessary to overcome the defendants' immunities. Thus, as detailed more fully below, the factual revelations just described are ultimately fatal to Plaintiffs' claims.

## II.    Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The moving party may meet its burden of showing that no genuine issue of material fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying

facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of their case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in [their] favor" and must "set forth specific facts" that offer more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252, 256. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## III.   Discussion

Plaintiffs assert a combination of federal constitutional claims and state tort claims. Because the state and federal claims are governed by different immunity doctrines and theories of liability, I address each set of claims separately, beginning with those arising under federal law.

### A.  Federal Claims

In Counts I through IV, Plaintiffs allege violations of the Fourth and Fourteenth Amendments to the United States Constitution, including conspiracies to commit the same. To ultimately succeed on any of their claims, Plaintiffs must show

that Defendants violated a federal right, and, because both defendants assert the affirmative defense of qualified immunity, that "the right was clearly established at the time the violation occurred such that a reasonable person would have known that [their] conduct was unconstitutional." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015).

### i. Fourth Amendment (Count I)

In Count I, Plaintiffs assert that Defendants violated the minors' Fourth Amendment right to be free from unreasonable seizure. In their Complaint, Plaintiffs allege that "J.H. and M.D. were wrongfully detained . . . without authority, jurisdiction, or probable cause," and that they "were later seized . . . pursuant to legal process without probable cause and under false pretenses." [ECF No. 1, ¶¶ 86–87]. Plaintiffs now "acknowledge that a Court Order for the seizure of J.H. was in place at the time she was taken from the Plaintiffs." [ECF No. 72, at 10]. Nevertheless, they insist their Fourth Amendment claim remains viable on the basis that "Defendant Farmer utterly failed to conduct a proper investigation into the Guardianship Order and the false allegations made against Mary Hood by Jessica Smith." *Id.*

Plaintiffs' Fourth Amendment claims are "addressed according to a 'reasonableness standard.'" *Parker v. Austin*, 105 F. Supp. 3d 592, 598 (W.D. Va. 2015). A seizure is reasonable—and therefore constitutional—if "(1) it is pursuant to a court order; (2) it is supported by probable cause; or (3) it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'" *Gedrich*, 282 F. Supp. 2d at 469 (quoting *Brokaw v. Mercer*

10

*Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)). Here, Plaintiffs' claim fails because the seizure of the minors was reasonable.

As suggested in my prior Memorandum Opinion and Order, Defendants cannot be held liable for the removal of M.D., "who was not yet under Plaintiffs' legal guardianship at the time of removal, . . . because there was probable cause to suspect neglect by M.D.'s biological mother." [ECF No. 53, at 14]. In light of factual developments, probable cause also existed to suspect J.H.'s caregivers of abuse or neglect. The minors' biological mother, Ms. Smith, admitted to CPS that she used drugs in the Hoods' home. [ECF No. 70-1, at 4]. Ms. Smith also "has had open CPS cases while living in Mary Hood's home." *Id.* at 51:4–8. Furthermore, Ms. Hood's own CPS history included a maltreatment substantiation from when Ms. Smith was a child, [ECF No. 72-1, at 95:20–97:2; ECF No. 72-5, at 15:17–19], and Mr. Hood was previously arrested on drug-related charges, [ECF No. 72-1, at 61:8–21]. Although the maltreatment finding against Ms. Hood has since been reversed, probable cause depends on the circumstances "as known to" the official at the time they effected the seizure. *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). It is similarly immaterial that Ms. Hood's substantiation and Mr. Hood's arrest "did not prevent the Family Court of Kanawha County from appointing [Plaintiffs] as J.H.'s guardian[s]." [ECF No. 1, ¶ 36]. "DHHR was permitted, in its discretion, to re-evaluate the appropriateness of [Plaintiffs]' home as a placement for [J.H.] in light of its ongoing investigation into [her] best

interests." *R.L.D. v. W. Va. Dep't of Health & Hum. Res.*, No. 17-1087, 2018 WL 6040310, at *5 (W. Va. Nov. 19, 2018). This is especially true where, as here, DHHR "wouldn't have had any reason to know" about the guardianship prior to this incident. [ECF No. 72-1, at 74:8–21 (Ms. Hood testifying that she never contacted CPS regarding the guardianship, the domestic violence petition against Ms. Smith, or Ms. Smith's resumed drug use)].

Moreover, Defendants Farmer and Frame acted pursuant to a court order when they effected the seizure of J.H. and M.D. [ECF No. 75-1, at 43:1–4, 46:13–21]. Acknowledging this fact, Plaintiffs now appear to challenge the validity of the court order based on perceived failures in the investigation that ultimately led to the minors' removal. *See* [ECF No. 72, at 10 (arguing the removal order "[d]oes [n]ot [t]rump" the guardianship order)]. Namely, Plaintiffs take issue with Defendant Farmer's diligence, or lack thereof, in confirming the Hoods' guardianship over J.H. and in verifying the safety concerns about the Hoods. But even if Ms. Farmer could have taken greater care, the "intervening acts of other participants," such as an exercise of prosecutorial discretion, will "insulate [her] from liability" unless she, for example, "lied to or misled the prosecutor." *Massey v. Ojanit*, 759 F.3d 343, 357 (4th Cir. 2014) (quoting *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)). At least two independent intermediaries—the prosecutor and the circuit court judge—ratified Defendant Farmer's investigative findings and concurred in her recommendation that a petition was warranted. *Cf.* [ECF No. 72-2, at 56:19–57:7 (Defendant Frame

explaining that it is "ultimately the prosecutor's decision whether to file the petition" and "then ultimately it's the judge who makes the decision whether to enter an order directing DHHR to take custody of the children")]. A review of Ms. Farmer's report to Prosecutor Burdick reveals no material falsehoods or omissions. She informed him that Ms. Smith indicated that J.H. "resides with" and "is in a guardianship with the paternal [sic] grandmother, Mary Hood," but that Ms. Smith "was unable to identify whether or not this guardianship had taken place before a family court judge." [ECF No. 70-1, at 21–22]. Defendant Farmer further noted Ms. Smith's "ongoing substance abuse issues, as evidenced by continued infant exposure to drugs, as well as CPS involvement, in which occurred in the paternal [sic] grandmother's home, Mary Hood." *Id.* at 22. Thus, Ms. Farmer communicated the relevant information to the prosecutor, who independently decided to draft and file a petition for removal. If the Petition itself or other aspects of the proceedings involved errors that delegitimize the court-ordered removal, those errors were not caused by Defendants Farmer or Frame.

Finally, to the extent that Plaintiffs' claim derives from "allow[ing] [the] Petition to be filed with incomplete and patently false information," [ECF No. 72, at 10], Defendants are entitled to absolute prosecutorial immunity, *see Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 135 (4th Cir. 1989) (holding that social workers filing a removal petition acted in a "prosecutorial, rather than an investigative or 'policing' capacity" and therefore "must be afforded absolute immunity from any liability

arising from this conduct"). Accordingly, both defendants are entitled to summary judgment on Count I.

### ii. Fourteenth Amendment (Count III)

In connection with their substantive due process claim, Plaintiffs assert that Defendants "invad[ed] their custodial, familial, and/or guardianship rights." [ECF No. 1, ¶ 117]. According to Plaintiffs, "Defendants interfered with their rights with respect to J.H. by ignoring and failing to verify the Guardianship Order, and by failing to perform any investigation into the well-being of J.H., who was legally in the custody of Mary Hood." [ECF No. 72, at 11].

Defendants contend that Plaintiffs' Fourteenth Amendment claim "is a veiled Fourth Amendment claim" and therefore substantive due process analysis would be inappropriate in this case. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (discussing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Although Plaintiffs' briefing is somewhat unclear, it does appear that their constitutional claims arise solely out of the state's seizure of J.H. and M.D. *See, e.g.*, [ECF No. 73, at 15 (summarizing the Fourteenth Amendment claim "in one sentence" as "using a person's position to ignore a Guardianship Order and remove a child from her home with absolutely no evidence of abuse or neglect and without conducting any

meaningful investigation")]. As discussed above, that seizure was reasonable and therefore did not violate the Fourth Amendment.

Plaintiffs do assert, in a section header, that "Count III Is Not A Fourth Amendment Claim." [ECF No. 72, at 11]. But nowhere in that section—or anywhere else in their briefing—do they address how the claims differ. Regardless, to the extent that Plaintiffs' claims are distinct, they also fail to establish a substantive due process violation.

"The touchstone of due process is the protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (citing *Dent v. West Virginia*, 129 U.S. 114, 123 (1889)). Where, as here, objectionable action by a member of the executive branch is alleged, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). "Generally, an act must 'shock the conscience' in order to constitute a violation of substantive due process." *Gedrich*, 282 F. Supp. 2d at 459–60 (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). "In the area of child protection, 'removal of a child in an emergency action from the custody of a parent suspected of abusing him, *based upon some evidence of child abuse*' does not shock the conscience." *Id.* at 460 (citing *Weller*, 901 F.2d at 391). Here, the minors were taken pursuant to a court order issued upon a finding of "imminent danger to the physical well-being of the children." [ECF No. 70-1, at 32]. As discussed above,

15

Defendants had reason to believe that Plaintiffs could not provide a safe environment for the minors, and they communicated all relevant information to the prosecutor. Nothing Defendants did or said could reasonably be found to "shock the conscience." Thus, Plaintiffs' substantive due process claim must be dismissed.

### iii. Conspiracy (Counts II and IV)

In Counts II and IV, Plaintiffs allege that Defendants conspired to commit the constitutional violations asserted in Counts I and III. To establish a civil conspiracy under § 1983, Plaintiffs must present evidence that Defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiffs'] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). Because I have determined that the defendants' actions in this case did not result in the "deprivation of a constitutional right," Plaintiffs' federal conspiracy claims must be dismissed. *See Glassman v. Arlington Cnty.*, 628 F.3d 140, 150 (4th Cir. 2010).

### B. State Claims

Having dismissed all of Plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (authorizing district courts to decline to exercise supplemental jurisdiction after the court "has dismissed all claims over which it has original jurisdiction").

In making this discretionary determination, the court considers factors such as "convenience and fairness to the parties, the existence of any underlying federal policy, comity, or considerations of judicial economy." *Ballock v. Costlow*, 430 F. Supp. 3d 146, 168 (N.D. W. Va. 2019) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . point toward declining to exercise jurisdiction over the remaining state-law claims.").

Fairness concerns any prejudice to the parties. *Ballock*, 430 F. Supp. 3d at 169 (citing *McCullough v. Branch Banking & Trust*, 844 F. Supp. 258, 261 (E.D.N.C. 1993)). Under West Virginia law, for one year from the date of an order dismissing an action, a party may re-file an action involuntarily dismissed for any reason not based on the merits. *Id.* (citing W. Va. Code § 55-2-18). Furthermore, the statute of limitations for any claim over which this court had supplemental jurisdiction is tolled while the case has been pending and for thirty days after the claim is dismissed. *Elshazli v. District of Columbia*, 415 F. Supp. 3d 20, 29 (D.D.C. 2019) (citing 28 U.S.C. § 1367(d)). Thus, a dismissal without prejudice, although perhaps an inconvenience, is not unfair. Accordingly, the first factor weighs in favor of dismissing Plaintiffs' state law claims.

As to the second and third factors, no underlying federal policy weighs in favor of the court retaining jurisdiction over Plaintiffs' remaining claims. Indeed, the tort

claims in this case involve issues of family law and state agency administration which are "at the heart of state sovereignty." *Ballock*, 430 F. Supp. 3d at 169 (quoting *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 354 (4th Cir. 2005) ("[T]hat which must be respected through 'comity' is identical to the traditional 'areas of paramount state concern,' and also the same as the 'important state interests' test.")). The remaining claims all arise out of a petition and removal order filed in West Virginia state court. It is therefore "clearly in the state court's interest to interpret and, if necessary, enforce its earlier rulings." *Id.* Thus, the second and third factors weigh heavily in favor of declining to exercise supplemental jurisdiction here.

Finally, because this case is in the summary judgment phase, no overriding interest of judicial economy will be served by dismissing the claims. This factor thus weighs in favor of retaining jurisdiction; "standing alone, however, it does not outweigh the compelling fact that all remaining claims . . . involve quintessentially state law causes of action." *Id.*

Given that all federal claims have been dismissed, the court concludes that the balance of factors weighs strongly in favor of declining to exercise jurisdiction over the remaining state law claims. Pursuant to 28 U.S.C. § 1367(c)(3), Counts V, VI, VII, VIII, IX, and X will be dismissed without prejudice.

## IV.   Conclusion

Based on the foregoing, Defendants' Motions for Summary Judgment [ECF Nos. 68, 70] are **GRANTED in part**. The Motions are **GRANTED** as to Counts I, II,

III, and IV, which are hereby **DISMISSED with prejudice**. The remaining state law claims set forth in Counts V, VI, VII, VIII, IX, and X are **DISMISSED without prejudice**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 28, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

19